**MANCHESTER ENVIRONMENTAL COALITION and Michael Dworkin, Petitioners,**

v.

**ENVIRONMENTAL PROTECTION AGENCY and Douglas Costle, Administrator, Respondents.**

No. 1147, Docket 79–4062.

United States Court of Appeals, Second Circuit.

Argued June 14, 1979.

Decided Dec. 6, 1979.

Anthony F. Pagano, Manchester, Conn. (David L. Schulman, and Beck & Pagano, Manchester, Conn., on the brief), for petitioners Manchester Environmental Coalition and Dworkin.

James N. Cahan, Atty., Environmental Protection Agency, Washington, D. C. (Joan Z. Bernstein, Gen. Counsel, and Jeffrey O. Cerar, Deputy Associate Gen. Counsel, EPA, Washington, D. C., on the brief), for respondents Environmental Protection Agency and Douglas Costle, Administrator, EPA.

Richard S. Ewing, Washington, D. C. (James Sharp, and Arnold & Porter, Washington, D. C., on the brief), for intervenor-appellee National Realty Committee, Inc.

Nancy L. Buc, Washington, D. C. (Bruce H. Turnbull, Washington, D. C., Michael D. Hess, Mel P. Barkan, and Weil, Gotshal & Manges, New York City, and Washington, D. C., on the brief), for intervenor-appellee National Retail Merchants Association.

Joel S. Moskowitz, Deputy Atty. Gen., State of California, Sacramento, Cal. (George Deukmejian, Atty. Gen., and R. H. Connett, Asst. Atty. Gen., Sacramento, Cal., on the brief), for amicus curiae State of California.

Gus Bauman, Edward C. Maeder, Washington, D. C.; Ellen C. Newcomer, Chicago, Ill.; and Winston & Strawn, Washington, D. C., submitted a brief for amici curiae National Association of Home Builders, Building Owners and Managers Association International, Institutional and Municipal Parking Congress, International Council of Shopping Centers and National Parking Association.

Before MANSFIELD, MULLIGAN and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

On this petition to review the final order of the Environmental Protection Agency (EPA) filed January 22, 1979, which ap-proved the application of the State of Connecticut to revise its state implementation plan, we find the chief issue is whether the EPA erred in construing 42 U.S.C. § 7410(a)(5)(A)(iii) (Supp. I 1977), to require the Administrator to approve a state's request to revoke its indirect source review program without considering whether such revocation would render the state's plan inadequate to attain and maintain the national ambient air quality standards. We hold that the EPA's construction of this provision is in conflict with the statutory language. Accordingly, we vacate and remand.

## I.

In 1970 Congress amended the Clean Air Act, 42 U.S.C. §§ 1857–1858 (1970), to establish a comprehensive state and federal scheme to control air pollution in the United States.[1] Under this statutory scheme, there was delegated to the states the responsibility of developing state implementation plans (SIPs) designed to achieve and maintain the national ambient air quality standards (NAAQS) established by the federal government. 42 U.S.C. § 1857c–5 (1970).

Among the various control programs which the EPA first suggested was an indirect source review program (ISR) to be adopted by the states. Basically an ISR provides for the pre-construction review of facilities—such as shopping centers, sports complexes, highways and airports—which are likely to induce or attract significant motor traffic, thereby increasing the amount of mobile source generated air pollutants.

In 1973 the Administrator determined that the adoption of an ISR was mandatory if the SIPs were to comply with the standard set forth by the District of Columbia Circuit Court of Appeals in *National Resource Defense Council, Inc. v. EPA*, 475 F.2d 968 (D.C.Cir.1973).[2] There the court

---

1. The Clean Air Act Amendments of 1970, Pub. L.No.91–604, 84 Stat. 1676.

2. Indeed, the EPA promulgated 40 C.F.R. § 52.22 (1978) which required federally mandated

required the Administrator to review all SIPs and to disapprove those plans which failed to provide measures for maintaining the primary standard.[3] Those states whose plans were disapproved were given until April 15, 1973 to submit new plans, and until May 31, 1975 to attain the primary standard. The court required the Administrator to promulgate implementation plans for those states who failed to do so. *Id.* at 971. Since only Florida and Guam had adopted ISRs by the date established by the court, the Administrator was forced ·to promulgate ISRs for the remaining states in order to comply.

The ISRs promulgated by the EPA, however, drew heavy criticism because they represented a significant federal intrusion into the traditionally local domain of land use control. H.R.Rep.No.294, 95th Cong., 1st Sess. 221 (1977), *reprinted in* [1977] U.S. Code Cong. & Ad.News 1077, 1300; 120 Cong.Rec. 34697, 39267 (1974); 119 Cong. Rec. 38842–38844 (1973). Congress responded to this criticism by restricting the EPA's funding of the administration of programs designed to tax or limit parking facilities. Pub.L. 93–245, 87 Stat. 1071 (1974). The EPA thus was forced to suspend all federally promulgated ISRs insofar as they pertained to parking facilities, and eventually, in 1976, to suspend the indirect source regulations indefinitely. 40 C.F.R. § 52.-22(b)(16) (1978).

In the meantime, however, certain states, including Connecticut, had promulgated their own ISRs. This created an anomalous situation: federally promulgated ISRs were suspended, while those states which had complied voluntarily with the EPA's requirement to establish an ISR could abolish their ISRs only if they could show that their SIPs were still capable of achieving

and maintaining the NAAQS. 42 U.S.C. § 1857c–5(a)(3) (1976). To rectify this situation, Congress included in the 1977 amendments to the Clean Air Act a special provision severely limiting the EPA's authority over ISRs, and permitting the states to revise their SIPs "provided that such plan meets the requirements of this section." 42 U.S.C. § 7410(a)(5)(A)(iii) (Supp. I 1977).

Following the enactment of the 1977 amendments and pursuant to the provision referred to above, Connecticut submitted to the Administrator a series of revisions of its ISR, including a proposal to eliminate preconstruction review of all indirect sources except highways and airports. After receiving comments on these proposed revisions, the Administrator approved them on January 26, 1979. The Administrator's approval was premised on his view that § 7410(a)(5)(A)(iii) permitted a state to revise its ISR so long as the state complied with the section's *procedural* requirements of proper notice and hearing. According to the Administrator's construction of the section, it did not require the state to show that its SIP was capable of achieving and maintaining the NAAQS, despite the revocation of the ISR.

On March 15, 1979, the Manchester Environmental Coalition and Michael Dworkin filed in this Court a petition to review the Administrator's approval of Connecticut's SIP revision and thereafter presented oral argument. The State of California filed an amicus curiae brief and presented oral argument, opposing the EPA's interpretation, and indicating its interest in a similar ISR deletion request by the State of Nevada. The National Retail Merchants Association and the National Realty Committee, Inc., intervenors before the agency, filed briefs

---

indirect source review whether or not the SIP was adequate and whether or not the NAAQS could be attained without such a program.

**3.** Section 109 of the · Act, 42 U.S.C. § 7409 (Supp. I 1977), requires the EPA to promulgate standards for ambient air quality. The standards are of two types: "primary" standards which are "requisite to protect the public health", § 109(b)(1), 42 U.S.C. § 7409(b)(1)

(Supp. I 1977), and "secondary" standards which are "requisite to protect the public welfare from any known or anticipated adverse effects associated with the presence of such air pollutant in the ambient air." § 109(b)(2), 42 U.S.C. § 7409(b)(2) (Supp. I 1977). *Train v. Natural Resources Defense Council, Inc.*, 421 U.S. 60, 65 (1975).

and presented oral argument. Other interested amici curiae filed a brief.[4]

## II.

■ Turning to the chief issue in the case—the interpretation of 42 U.S.C. § 7410(a)(5)(A)(iii) (Supp. I 1977)—we note at the outset that in the light of *Sierra Club v. Morton*, 405 U.S. 727 (1972), petitioners—Manchester Environmental Coalition and Dworkin (the Coalition)—have standing to challenge the EPA's final order in this case. What is less clear, however, is how to resolve the asserted ambiguities posed by the language of § 7410(a)(5)(A)(iii) and, in particular, the proviso to that section:

· "Any State may revise an applicable implementation plan approved under this subsection to suspend or revoke any such program included in such plan, *provided that such plan meets the requirements of this section.*" (emphasis added).

The plain meaning of the statutory language would seem to be that a state may revoke its ISR provided that its overall SIP complies with all of the requirements of § 7410—*both procedural and substantive.* This interpretation of the phrase "requirements of this section" would conform to the meaning of the same phrase as it is used elsewhere in § 7410. Indeed, in other sections of the statute, Congress had no difficulty in specifying when it wanted only *certain* requirements to apply. *E. g.,* 42 U.S.C. § 7474(b)(1)(C)(2) (Supp. I 1977) (redesignation of areas—only procedural compliance required).

■ The EPA, however, has construed the proviso to refer only to the procedural requirements of § 7410, although it concedes that its construction is "difficult to reconcile" with the words of the statute. 43 Fed.Reg. 10709 (1978). Before us the EPA has attempted to support its construction by urging various arguments of policy, legislative intent and possible intra-statutory conflict. We find none to be persuasive. While we are mindful of the deference to

be accorded an administrative agency in the construction of a statute it is charged with enforcing, *e. g., Udall v. Tallman*, 380 U.S. 1, 16 (1965), we cannot accept the EPA's interpretation of the proviso here in question.

The EPA contends that if the proviso is read to require substantive compliance with § 7410, it would be duplicative of the general revision section, § 7410(a)(3)(A). While there may be some overlap between the ISR deletion section and the general revision section, they are not redundant. As the State of California points out, the EPA had the power to refuse to permit a state to delete an ISR even before the addition of the ISR clause in 1977. It strikes us as more plausible to view § 7410(a)(5)(A)(iii) as an effort by Congress to be thorough in enumerating the situations in which the EPA would confront ISRs.

■ We also reject the EPA's contention that its interpretation avoids the dilemma of an internal conflict within subsection (a)(5)(A). The EPA argues that if a state rescinds its ISR without EPA approval or refuses to administer such a program, then the EPA will be required to promulgate and enforce its own ISR—an action which is specifically prohibited by § 7410(a)(5)(A)(ii). The statute itself, however, makes clear that the Administrator's remedy would *not* be to promulgate his own plan, inasmuch as the EPA is limited to enforcing ISRs adopted by the states. Moreover, if a state fails to *enforce* an existing plan, the EPA's remedy would be to enforce the *state* ISR. *Brown v. EPA*, 566 F.2d 665 (9 Cir. 1977).

Finally, the EPA argues that harsh inequities would result if states that had attempted to comply with the ISR requirement were not permitted to rescind these programs without restriction. Although the adoption of these ISRs may not have been entirely voluntary, the fact nevertheless remains that these states premised their SIPs, at least in part, on the utiliza-

---

4. The history of the administrative proceedings in this matter is more fully set forth in the EPA's Notice of Proposed Approval Of Implementation Plan Revision. 43 Fed.Reg. 10708 (1978).

tion of an ISR. Indeed, it may well be that harsh inequities would result, not if ISR states cannot peremptorily delete these programs, but if other states must watch while an ISR state, the success of whose implementation effort depends on its ISR, abandons its pollution control plan.

In short, none of the arguments advanced by the EPA is sufficient to overcome the clear import of the statutory language itself. As the Supreme Court stated in *TVA v. Hill*, 437 U.S. 153 (1978), courts should not "ignore the ordinary meaning of [the] plain language" of the statute, even though effectuating that meaning may have undesirable public policy ramifications. *Id.* at 173. In the instant case, for us to approve the EPA's construction of the proviso in question would be to preempt congressional action by judicially decreeing what " 'accords with some modicum of common sense and the public weal.' " *Id.* at 194. We decline to do so.

At the same time, however, we are not persuaded by the Coalition's argument that the statute as it now stands requires a "combination of mobile generated control programs as part of [a] SIP." The Coalition urges this construction based on its assertion that an ISR is an air quality maintenance plan, and air quality maintenance plans are among the described components of a SIP under § 7410(a)(2)(B) as amended in 1977. The fact is that the amendment of that section deleted a reference to land use controls that was clearly aimed at ISRs. H.R.Rep.No.294, *supra*, at 16, *reprinted in* [1977] U.S.Code Cong. & Ad.News 1094. Moreover, the Coalition's position assumes that the Connecticut ISR is one of "such other measures as may be necessary to insure attainment and maintenance" of NAAQS. 42 U.S.C. § 7410(a)(2)(B) (Supp. I 1977). In view of the definition of ISRs set forth in § 7410(a)(5)(D), we find the Coalition's assumption to be untenable.

The position of the National Realty Committee is that under § 7410(a)(5)(A)(iii) a state's action in revoking its ISR results in a self-executing revision of its SIP and that no approval by the EPA is required. Al-

though this position faces a barrier in the literal language of the statute, it at least has the virtue of consistency in that Congress clearly intended to allow those states that had ISRs to amend or eliminate them under some circumstances. H.R.Conf. Rep.No.564, 95th Cong., 1st Sess. 126 (1977), *reprinted in* [1977] U.S.Code Cong. & Ad. News 1502, 1507. In support of its position, the Committee suggests that § 201 of the House version of the Clean Air Act amendments of 1977 contained a provision permitting states to revise their ISRs without EPA participation. The House Report on that bill, however, does not describe § 201 as a prohibition on EPA approval of ISRs, as the Committee brief suggests, but rather as a "limitation" on the EPA's authority to require ISR adoption or implementation by the states. Moreover, among the seven enumerated limitations on the EPA's power, none refers to the agency's authority to deal with the revocation of ISR components already approved. H.R.Rep. No.294, *supra*, at 15–16, *reprinted in* [1977] U.S.Code Cong. & Ad.News 1093–94. The absence of any reference to restrictions on the EPA's power to review deletions, coupled with the fact that the conference committee added the requirements proviso to that House bill, makes it difficult to accept the suggestion that the EPA was meant to be excluded from review entirely.

We are not persuaded by the Committee's comparisons to other sections of the statute dealing with state revisions relating to stationary fuel sources, the elimination of intracity toll bridge increases, or gubernatorial emergency revisions. All three involve far narrower and more focused changes in a state's SIP. An ISR deletion, on the other hand, is a broad change cutting across a state's SIP. Without more, one naturally would expect the EPA to conduct a review of such a proposed change, even though it is not expressly provided for in the statute. Some support for this position can be found in the fact that no time limit is imposed on ISR deletion reviews, as compared to the three and four month limits on the other revisions noted previously. Finally, each of

the three examples suggested by the National Realty Committee requires either a determination of compliance with *all* the provisions of § 7410 or a certification that equivalent measures will be taken.

The one thing that emerges clearly from the 1977 Amendments is the congressional commitment to the overriding goal of the Clean Air Act, namely, clean air. H.R.Rep. No.294, *supra*, at 3, *reprinted in* [1977] U.S. Code Cong. & Ad.News 1080; Conference Committee Clarifying Statement, 123 Cong. Rec. H8662 (Aug. 4, 1977), *reprinted in* [1977] U.S.Code Cong. & Ad.News 1570. See also the addition of Part D, 42 U.S.C. §§ 7501–7508 (Supp. I 1977). It would do violence to the legislative intent if Connecticut were permitted to drop its ISR, as National Realty suggests, with only a reminder that the state has obligations under the Act.

The difficult question of statutory interpretation presented by this case is made considerably easier by the congressional extension of the deadline for states to attain the NAAQS. As a consequence, all states which are not in compliance with NAAQS are now submitting SIP revisions to the EPA. Although these revisions were due January 1, 1979, and Connecticut's revision still is not in, we were informed at argument that all of the states are late in complying with the deadline. Presumably, the EPA soon will consider a new Connecticut SIP—a plan which presumably will not include an ISR. An EPA determination of compliance with regard to the new SIP would then kill both birds with a single administrative stone.[5]

Accordingly, since we find the EPA's construction of the ISR deletion proviso untenable, the EPA order is vacated and the case is remanded to the EPA for further proceedings consistent with this opinion.

■ The Coalition's request for attorney's fees is granted. *Friends of the Earth*

---

**5.** The stringent economic strictures triggered under Part D of the 1977 amendments assure that ISR states will not obtain any extra time as a consequence.

*v. Carey*, 535 F.2d 165, 173 (2 Cir. 1976), *cert. denied*, 434 U.S. 902 (1977).[6]

Vacated and remanded.

---

**6.** Subsequent to the filing of this opinion, the Court entered an order approving, on consent, an award of $13,000 attorney's fees to the Coalition.