**KEEN TRANSPORT, INC., Plaintiff,**

v.

**UNITED STATES of America et al., Defendants.**

**Civ. A. No. C75–170.**

United States District Court,
N. D. Ohio, E. D.

Aug. 6, 1976.

**6**

Paul F. Beery, Michael Spurlock, Columbus, Ohio, John A. Kundtz, Thompson, Hine & Flory, Cleveland, Ohio, for Keen Transport, Inc.

John H. D. Wigger, U. S. Dept. of Justice, Washington, D. C., for United States of America.

Peter A. Fitzpatrick, I. C. C., Washington, D. C., for I. C. C.

MEMORANDUM

Before CELEBREZZE, Circuit Judge, LAMBROS and KRUPANSKY, District Judges.

KRUPANSKY, District Judge.

Plaintiff Keen Transport, Inc. (Keen), seeks to enjoin enforcement of Order No. MC–111320 of the Interstate Commerce Commission (ICC or Commission) denying plaintiff's gateway elimination application. Keen operates as a common motor carrier, transporting specific commodities in interstate commerce between various points in the United States under a Certificate of Public Convenience and Necessity No. MC–111320 and Subs thereto as issued by the ICC. Plaintiff's Certificate contains separate grants of Irregular Route Authority which, by combination (tacking) at a common service point (gateway), permit through transportation.

On February 25, 1974, the ICC issued an Order adopting Section 1065.1, Title 45 of the Code of Federal Regulations, wherein it terminated tacking of irregular route certificates effective June 4, 1974, unless motor carriers had filed with the ICC either a letter notice, for direct highway mileage (from points of origin to destination) constituting 80% of the mileage via the gateway, or an OP–OR–9 application, for direct distances of less than 80% of the gateway mileage. *See* 119 M.C.C. 530.

On May 31, 1974, L. E. Gresh, Keen's Director of Transport Relations, filed 128 letter notices with the Commission in Washington, D. C. and conferred with Lewis Ames, legal counsel for the Commission's Operating Rights Section. Extension of the June 4 OP–OR–9 application filing deadline was requested. As a result of the conference, Gresh concluded that the filing deadline was extended to June 15, 1974.

On June 11, 1974, plaintiff submitted its OP–OR–9 application with a cover letter referencing the May 31 conference. On July 24, 1974, the Commission rejected Keen's application as late filed.

Plaintiff's Petition for Reconsideration was denied by Order No. MC–111320, on August 29, 1974 (August Order). Keen initiated this action on February 21, 1975. A Temporary Restraining Order, enjoining enforcement of the August Order pending a hearing on the merits, was granted March 5, 1975.

On October 24, 1975, a three-judge court convened in the Northern District of Oklahoma, issued its Opinion in *Squaw Transit Company v. United States,* 402 F.Supp. 1278 (N.D.Okl.1975) wherein it considered § 1065.1, Title 45 of the Code of Regulations as applied to OP–OR–9 applications. The facts of *Squaw Transit* disclose that, although the OP–OR–9 applications therein considered were timely filed, said applications were materially incomplete and, therefore, defective. Ignoring any uniformity in accepting the materially defective applications, the ICC rejected a number of said applications, including that of Squaw Transit. The Court reversed and remanded to the ICC for further consideration the rejected application of Squaw Transit, citing the Commission's lack of uniformity in accepting and rejecting applications, inability and inadequacy of the Commission's procedures to timely administer the gateway elimination program, and Squaw Transit's difficulties in timely complying with the ICC filing deadline. Judge Cook's concurring opinion in said decision characterized the Commission's actions as clearly arbitrary and capricious.

On January 15, 1976, in accordance with the mandate of *Squaw Transit,* the ICC modified its policy and accepted additional information to support the late-filed applications previously rejected for non-compliance with the provisions of 49 C.F.R. § 1065.1(d)(2).

On March 15, 1976, the plaintiff, before this Court, limited its challenge of the August Order to its assertion that the Commission acted arbitrarily and capriciously in failing to uniformly apply the filing deadline.[1]

In response to Keen's challenge, the ICC disclaims arbitrary or capricious action as a result of a lack of uniformity in accepting and rejecting OP–OR–9 applications, and rationalizes its rejection of Keen's application, citing the reasons in its August Order: (1) the necessity for expedient action during the energy crisis; (2) the adequacy of the filing time allotted by 45 C.F.R. § 1065.1; and (3) the existence of an alternative remedy to Keen.

The recent Supreme Court decision in *Bowman Transportation, Inc. v. Arkansas Best Freight Sys., Inc.,* 419 U.S. 281, 285–6, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) details the proper standard of judicial review of ICC decisions:

Under the "arbitrary and capricious" standard the scope of review is a narrow one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency." The agency must articulate a "rational connection between the facts found and the choice made." While we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. (Citations omitted).

1. The remaining four grounds initially asserted were: The Commission deprived plaintiff of a property right without due process of law since the ICC action revoked portions of plaintiff's Certificate of Public Convenience; the Commission violated procedural due process by allotting an inadequate filing period; the Commission's action violates the Interstate Commerce Act, 49 U.S.C. § 312; and the Commission's action violated the Administrative Procedure Act, 5 U.S.C. § 558(c). Plaintiff's failure to brief or argue these remaining issues indicates to the Court an abandonment thereof. *C–Line, Inc. v. United States,* 376 F.Supp. 1043, 1051 (D.R.I.1974).

The Commission is not bound by *stare decisis* and inconsistency does not necessarily import capriciousness, according to the pronouncements of *Whitehouse Trucking, Inc. v. United States,* 261 F.Supp. 9 (N.D.Ohio 1966); however, a lack of uniformity of treatment by an agency of similarly situated parties is clearly impermissible. *Interstate Contract Carrier Corp. v. United States,* 389 F.Supp. 1159 (D.Utah 1974); *R–C Motor Lines, Inc. v. United States,* 350 F.Supp. 1169 (M.D.Fla.1972), *aff'd* 411 U.S. 941, 93 S.Ct. 1925, 36 L.Ed.2d 406 (1973); *Fraenkel v. United States,* 320 F.Supp. 605 (S.D.N.Y.1970); *H C & D Moving & Storage Co. v. United States,* 298 F.Supp. 746 (D.Haw.1969).

■ Applying the foregoing, the Court is constrained to conclude that the Commission's denial of Keen's application while accepting both late-filed applications as well as woefully incomplete applications from other carriers was palpably arbitrary and capricious, thereby compelling reversal of the August Order.

The record before this Court is replete with examples of the Commission's complete disregard of a uniform policy in processing OP–OR–9 applications. The Commission concedes that at least two other late-filed applications were accepted. Further, Michael Erenberg, Assistant Deputy Director of the Commission's Operating Rights Section stated in his affidavit:

> Respecting the June 4th deadline, the Commission has permitted disposition of some late-filed applications. In these cases, however, the applicant has demonstrated a good-faith attempt to comply with the June 4, 1974, deadline, as for example where the mailing was accomplished prior to June 4, 1974, but received for filing a date (sic) or so late. Therefore, it has not been our policy to deny an application solely for the reason that it was filed shortly after June 4, 1974. . .

The Commission's attempt to distinguish Keen's situation from those carriers whose untimely applications were accepted by asserting that the latter were mailed before the filing deadline, thus evidencing a good-faith effort of compliance, is not persuasive.

■ A perusal of the relevant regulations discloses no "good faith" exception, and the Commission's reliance on *American Farm Lines v. Black Ball Freight Services,* 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970), as authority for such exception, is inapposite. While *American Farm Lines* enunciates the general principle that an administrative agency has the discretion to modify its procedural rules, it further recognizes that said discretion must not be exercised arbitrarily. *Id.* at 539, 90 S.Ct. 1288. *See also, National Labor Relations Board v. J. S. Popper, Inc.,* 113 F.2d 602 (3rd Cir. 1940). The criterion selected by the Commission to evidence a good faith effort, *i. e.* timely mailing of an application, is clearly arbitrary and without rational basis, inasmuch as it fails to consider either an applicant who attempted to personally file before all the exempted mailed applications were received by the Commission, or one whose representative conferred with the Commission concerning hardships presented by the filing deadline, as Keen did. Further, the ineluctable conclusion is that, had the Commission properly employed a uniform, good faith standard with regard to the filing deadline, Keen's application most certainly would have been accepted.

Moreover, as the *Squaw* decision demonstrates, the Commission knowingly accepted incomplete applications to be supplemented subsequent to the June 4th deadline. Indeed, the post-*Squaw* modification of policy resulted in the ICC's accepting late-tendered evidence as recently as February, 1976. 41 Fed.Reg. 2459. The Court is not persuaded that the Commission's acceptance of materially defective applications can rationally be distinguished from its refusal to accept Keen's.

This determination is predicated in large part upon the purpose of the Commission's gateway regulation, as enunciated in its General Policy Statement of January 16, 1976, the post-*Squaw* modification:

The Commission will be afforded a better opportunity to determine those instances in which the public convenience and necessity requires proposed direct operations. 41 Fed.Reg. 2459.

Given such purpose, it is difficult for the Court to understand the preferential treatment accorded certain select skeletal applications, especially since the record discloses that the late-tendered evidence was often the traffic abstract, the very substance of the OP–OR–9. Further, in light of the emergency created in 1973 by the energy crisis, which was the impetus for the gateway elimination proceedings, it would have been more expeditious for the ICC to accept untimely applications evidencing a good faith effort to comply with the deadline than to knowingly accept materially defective applications incapable of processing pending submission of additional material.

Finally, the Commission's asserted rationale for permitting submission, in January, 1976, of late-filed evidence, by "those carriers which have exhausted numerous man hours in attempting to comply with the regulations will not see their efforts rendered futile," 41 Fed.Reg. 2459, is even more compelling with regard to Keen as compared to carriers filing deficient applications, in light of Keen's monumental effort in completing and filing the applications within seven days of the nearly impossible burden imposed by the ICC deadline.

Accordingly, the Court concludes that the Interstate Commerce Commission acted arbitrarily and capriciously in rejecting Keen's application while accepting untimely filed or materially defective OP–OR–9 applications from other selected carriers.

■ Even had the Commission acted uniformly with regard to OP–OR–9 applications, the Court is further constrained to conclude that the contracted filing period mandated by 45 C.F.R. § 1065.1 was inherently unreasonable and arbitrary, as manifested by the untold number of incomplete and late-filed applications. *See, National Ass'n of Indep. Tel. Producers & Distributors v. Federal Commun. Comm'n,* 502 F.2d 249 (2d Cir. 1974). Moreover, in establish-

ing an inflexible sixty-day filing period, the Commission failed to account for the wide divergence in carrier route authorities, with the concomitant increase in required mileage analyses. Obvious is the conclusion that a carrier such as Keen, with a 48-state authority, necessarily required more time to prepare calculations than a carrier with only regional authority. The Commission's failure to consider this highly relevant factor further constitutes arbitrary and capricious action. *See, Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

Accordingly, upon review of the entire record herein, the Court concludes that the Interstate Commerce Commission acted arbitrarily and capriciously in rejecting plaintiff's gateway elimination application, and therefore reverses and remands this matter thereto for reconsideration in light of this opinion.

IT IS SO ORDERED.