No. 79–486. UNITED STATES STEEL CORP. ET AL. v. UNITED STATES ENVIRONMENTAL PROTECTION AGENCY. C. A. 7th Cir. Certiorari denied.

MR. JUSTICE REHNQUIST, with whom MR. JUSTICE WHITE and MR. JUSTICE POWELL join, dissenting.

On August 7, 1977, Congress enacted the Clean Air Act Amendments of 1977, Pub. L. 95–95, 91 Stat. 685. These

Amendments required compliance by 1982 with various ambient air quality standards promulgated earlier by the United States Environmental Protection Agency (EPA). Under the Amendments, the States were to submit to EPA a list of "nonattainment areas," i. e., those regions measured as not complying with EPA's standards. The deadline for this submission was December 5, 1977. EPA was then to promulgate a composite list of nonattainment areas by February 3, 1978. Finally, the States were to rely upon EPA's list in formulating "State Implementation Plans" by January 1, 1979. According to the Amendments, these plans were to impose certain stringent restrictions upon industries located in regions designated as nonattainment areas.

Both petitioners have facilities located in Lake County, Ind., which was included in the list of nonattainment areas submitted by the State of Indiana to EPA on December 5, 1977. EPA promulgated its list, which included Lake County, on March 3, 1978. At the same time, EPA announced that the designations were immediately applicable and effective. In explaining its failure to promulgate the list as a proposed rule and to comply with the notice-and-comment provisions of the Administrative Procedure Act, 5 U. S. C. § 553, EPA asserted that it had "good cause" to dispense with the requirements as provided in 5 U. S. C. §§ 553 (b)(B) and 553 (d)(3). In particular it cited the need to give the States immediate guidance on the location of nonattainment areas so that those States could meet the deadline of January 1, 1979, for their implementation plans. EPA did solicit after-the-fact comments, due by May 2, 1978, and subsequently amended its list in certain respects not relevant here.

Petitioners brought the present action for review in the United States Court of Appeals for the Seventh Circuit, claiming, *inter alia,* that EPA's designation of Lake County as a nonattainment area was "not in accordance with law" under the APA because of EPA's failure to follow the notice-and-

comment procedure. The Court of Appeals rejected this claim on two grounds. First, it held that the tight statutory schedule under which EPA was operating provided that agency with "good cause" to dispense with the usual procedures. 605 F. 2d 283, 286 (1979). Second, it held that, under 42 U. S. C. § 7607 (d)(9) (1976 ed., Supp. I), even if EPA had failed to abide by the procedural requirements of the APA its action would not be reversed unless petitioners demonstrated that they had objected to the procedure during the grace period provided by EPA for after-the-fact comments and that the error was " 'so serious and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if such errors had not been made.' " 605 F. 2d, at 290, quoting 42 U. S. C. § 7607 (d)(8) (1976 ed., Supp. I) as incorporated by § 7607 (d)(9)(D) (1976 ed., Supp. I). According to the Court of Appeals, petitioners had failed to carry their burden as to either of these factors.

The first holding of the court below is in square conflict with the decisions of two other Courts of Appeals. In *Sharon Steel Corp.* v. *EPA,* 597 F. 2d 377 (CA3 1979), and *United States Steel Corp.* v. *EPA,* 595 F. 2d 207 (CA5 1979), the Courts of Appeals for the Third and Fifth Circuits held that EPA did not have good cause to dispense with notice-and-comment rulemaking in promulgating the very list at issue here.

While conceding that a conflict exists, EPA argues that "the unique statutory circumstances that created the practical need to promulgate the original designations without prior notice and comment no longer exist, and the issue presented . . . will not recur." Brief in Opposition 7. In the area of environmental regulation, however, tight statutory schedules are both quite common and frequently unmet. If EPA's actions in the present case pass without review by this Court, persons subject to EPA's jurisdiction in different parts of the country will be entitled to different procedural protections when either they or EPA find themselves up against a dead-

line. Moreover, these recurring deadlines will almost invariably have passed by the time this Court receives a petition, allowing EPA to argue in each case that, because the deadline has passed, the issue is no longer ripe for review. While no party claims this case is moot, the fact that the issue is "capable of repetition, yet evad[es] review," *Southern Pacific Terminal Co. v. ICC*, 219 U. S. 498, 515 (1911), makes this a classic case for a grant of certiorari.

As for the alternative holding of the court below, it appears that the unusually strong showing demanded by § 7607 (d)(9)(D), but not by the APA, is required only in certain types of actions listed in § 7607 (d)(1). See 42 U. S. C. § 7607 (d)(9) (1976 ed., Supp. I). Although the Court of Appeals suggested that promulgation of the list "arguably" could be characterized as one of those enumerated actions, it went well beyond the statutory language to hold that "Congress meant this limitation on review of procedural errors to extend to all rulemaking by the EPA whether or not it is in the explicit categories covered by all the provisions of section 7607 (d)." 605 F. 2d, at 291. As petitioners point out, this ruling has the effect of establishing two Administrative Procedure Acts, one for the EPA and one for all other agencies.

Apparently uncomfortable with this holding, EPA attempts to dismiss it as dicta. Brief in Opposition 9. It clearly is not. It was an independent, alternative basis for the decision of the court below, no more dicta than its companion holding that EPA demonstrated good cause. In fact, the Court of Appeals relied on its interpretation of § 7607 (d)(9) as a reason for rejecting the conclusions of the Third Circuit and the Fifth Circuit as to the legality of EPA's action. See 605 F. 2d, at 291, n. 14.

Either of these issues might merit certiorari in its own right; in tandem they present a formidable candidate for review. The fact that the requirements of the Clean Air Act Amendments virtually swim before one's eyes is not a rational basis, under these circumstances, for refusing to exercise our discre-

tionary jurisdiction. Admittedly, it would be easier to decide a case turning on common-law principles of property or contract, and more interesting to decide a case involving competing fundamental principles of constitutional law. But here, in grappling with the problem of air pollution on a nationwide basis, Congress has quite understandably enacted a very complex statute that seeks to accomplish regulatory goals while at the same time providing procedural protection for the regulated. It might have avoided some of the complexity by making the EPA administrator a virtual czar to the extent allowed by the Constitution, but it chose a more balanced approach. Congress has made this choice and has designated the courts of appeals to construe the innumerable provisions of the Act. We can avoid invocation of our jurisdiction to resolve conflicts among the decisions of the courts of appeals construing important sections of the statute only by breaking faith with the spirit, if not the letter, of those Acts of Congress making our jurisdiction in virtually all cases discretionary rather than obligatory. I therefore would grant the writ of certiorari.