**STATE OF ARIZONA, Petitioner,**

v.

**Lee M. THOMAS,\* Administrator, U.S. Environmental Protection Agency, Respondent.**

**No. 86–7164.**

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 13, 1987 \*\*.

Decided Aug. 10, 1987.

---

\* Substituted for William D. Ruckelshaus pursuant to Fed.R.App.P. 43(c).

\*\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 3(f) and Fed.R.App.P. 34(a).

James R. Redpath, Phoenix, Ariz., for petitioner.

David W. Zugschwerdt, Washington, D.C., for respondent.

Before PREGERSON and CANBY, Circuit Judges, and WILSON,*** District Judge.

PREGERSON, Circuit Judge:

The State of Arizona petitions for review of the Environmental Protection Agency's partial disapproval of its state implementation plan revisions for attaining the carbon monoxide and total suspended particulate national ambient air quality standards in Pima County, Arizona. The Environmental Protection Agency disapproved the state implementation plan revisions because they lacked adequate new source review rules for sources of both carbon monoxide and total suspended particulates.

We deny Arizona's petition.

## BACKGROUND

The Clean Air Act, as amended in 1970, requires the Environmental Protection Agency ("EPA") to establish national ambient air quality standards for each air pollutant that the EPA determines may

*** The Honorable Stephen V. Wilson, District Judge for the Central District of California, sitting by designation.

reasonably be anticipated to endanger the public health, Clean Air Act ("CAA") §§ 108–09, 42 U.S.C. §§ 7408–09, and to divide the nation into air quality control regions. CAA § 107, 42 U.S.C. § 7407. The 1970 Clean Air Act also requires states to develop a state implementation plan ("SIP") for attaining the national ambient air quality standards in each air quality control region within the state. CAA § 110, 42 U.S.C. § 7410.

The 1977 amendments to the Clean Air Act added section 107(d), 42 U.S.C. § 7407(d), which required the EPA, in consultation with each state, to submit a list of air quality control regions or portions of air quality control regions in which national ambient air quality standards were still being violated. Each state with such a "nonattainment area" is required to submit a revision to its SIP for that area including regulations that would ensure attainment of the standards that were still being violated.

Each nonattainment area SIP revision must include "new source review rules," a specialized permit program providing for review of new stationary sources of the pollutants subject to the standards being violated. The EPA must approve or disapprove any nonattainment SIP revision proposed by the states. CAA § 110(a)(3), 42 U.S.C. § 7410(a)(3). If a state fails to submit an adequate SIP revision, the EPA may ban construction of new major sources of the subject pollutants in the nonattainment area. *See* CAA § 110(a)(2)(1), 42 U.S.C. § 7410(a)(2)(I).

When evidence indicates that a standard has been achieved in a nonattainment area, a state may revise its list of nonattainment areas, subject to the approval of the EPA. CAA § 107(d)(5), 42 U.S.C. § 7407(d)(5).

Among the pollutants for which the EPA has promulgated standards are carbon monoxide ("CO") and total suspended particles ("TSP"). 40 C.F.R. § 50.6 (ambient air quality standard for particulate matter); 40 C.F.R. § 50.8 (ambient air quality standard for carbon monoxide).

In 1979, following the passage of the 1977 amendments to the Clean Air Act and its nonattainment designation requirements, the EPA classified approximately 2000 square miles of Pima County, Arizona as a nonattainment area for both the CO and TSP standards. Arizona submitted SIP revisions for attaining both the CO and TSP standards, but not soon enough to prevent a new source construction ban from going into effect. On July 7, 1982, the EPA approved Arizona's proposed SIP revisions on the condition that the state adopt certain changes in its new source review rules. The EPA also lifted the construction ban. 47 Fed.Reg. 29532, 29533 col. 3 (1982).

In October 1985, Arizona submitted the amended new source review rules requested by the EPA. However, the new rules Arizona submitted only applied to those parts of Pima County that Arizona considered nonattainment—approximately 900 square miles for CO and 60 square miles for TSP—and not the area that EPA had designated nonattainment—approximately 2,000 square miles for each pollutant. While approving the rules for the areas they covered, the EPA rejected the SIP revision overall and reimposed the new source construction ban on those areas of the Pima County nonattainment area not covered by the new rules. 51 Fed.Reg. 3335 (1986). Arizona petitions this court to vacate that EPA ruling.

On March 20, 1984, the EPA proposed a new particulate standard, the "PM$_{10}$ standard, to replace the current TSP standard. 49 Fed.Reg. 10408 (1984). On April 2, 1985, the EPA proposed revising SIPs to conform to the new PM$_{10}$ standard. 50 Fed.Reg. 13130. The EPA has taken no further steps toward imposing the new standard, but, in light of its proposal, the EPA is deferring issuance of notices of inadequate state TSP implementation plans. 50 Fed.Reg. 13130, 13135, col. 1 (1985).

When Arizona submitted its proposed new source review rules, it also requested that the EPA redesignate 1100 square miles of the CO nonattainment area as "attainment" because no violations of the CO standard had been detected in that area

for some time. On August 4, 1986, the EPA accepted Arizona's redesignation request, reducing the size of the CO nonattainment area to 900 square miles. The newly designated CO nonattainment area covers the same area that Arizona considers nonattainment and, therefore, is the area subject to the new source review rules in Arizona's SIP revision submitted in October 1985. 51 Fed.Reg. 27843.

### ANALYSIS

Clean Air Act § 307(b)(1), 42 U.S.C. § 7607(b)(1), which authorizes review of local EPA actions by the United States Court of Appeals for the locality, does not specify a standard of judicial review. Courts have applied the standard of review mandated by the Administrative Procedure Act, 5 U.S.C. § 706(2)(A): the administrator's final actions will be upheld unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Western Oil & Gas Association v. EPA*, 767 F.2d 603, 605–06 (9th Cir.1985).

Under this standard, a court must engage in a "substantial inquiry," *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), but should not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Ins.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). The court's role is to ensure that the agency considered all of the relevant factors and that its decision contained no "clear error of judgment." *Overton Park*, 401 U.S. at 416, 91 S.Ct. at 824.

I. *Carbon Monoxide State Implementation Plan Revision Disapproval*

■ Despite Arizona's initial argument challenging the EPA's disapproval of its CO SIP revision, both Arizona and the EPA now maintain that the EPA's redesignation of 1100 square miles of the Pima County CO nonattainment area as attainment, 51 Fed.Reg. 27843, renders moot Arizona's appeal from the EPA's disapproval of Arizona's CO SIP revision. We agree. The 900 square miles that still remain within EPA's CO nonattainment area are subject to Arizona's new source review rules submitted to the EPA in October 1985 and approved by the agency. 51 Fed.Reg. 3335. The EPA's CO new stationary source construction ban has been lifted. 51 Fed.Reg. 27843.

II. *Total Suspended Particulate State Implementation Plan Revision Disapproval*

Arizona argues that the EPA was wrong to disapprove Arizona's proposed TSP new source review rules and reimpose the TSP stationary source construction ban while the EPA was considering altering the particulate ambient standard and deferring issuing notices of inadequacy for other state TSP implementation plans. 50 Fed.Reg. 13135, col. 1 (1985); 48 Fed.Reg. 50697 (1984).

■ In support of this argument Arizona offers *Keen Transport, Inc. v. United States*, 446 F.Supp. 5, 8 (N.D.Ohio 1976) ("[A] lack of uniformity of treatment by an agency of similarly situated parties is clearly impermissible."). *Keen Transport* is clearly distinguishable. It involved inconsistent application of a filing deadline to identically situated interstate carriers. Arizona does not assert that any other state, informed of the inadequacy of its proposed SIP when Arizona was, has received better treatment than Arizona has. Arizona received notice of its inadequate new source review rules in July 1982, as part of conditional approval of its SIP revision. 47 Fed. Reg. 29532, 29533, col. 3 (1982). Deferral of inadequacy notices to other states did not begin until at least 1985. *See* 50 Fed. Reg. 13130, 13135, col. 1 (1985).

■ Independent of the equal treatment question, Arizona questions the EPA's authority to impose the TSP standard against Arizona in light of the EPA's proposal to replace that standard with the $PM_{10}$ standard. Arizona seeks a deferral of EPA action similar to the deferrals granted to those unspecified states whose notices of inadequate TSP SIPs have been deferred in anticipation of action on the $PM_{10}$ standard.

50 Fed.Reg. at 13135, col. 1. Arizona has no right to such a deferral. The implementation of the $PM_{10}$ revised particulate standard is still only a proposed action and does not affect the EPA's authority to enforce the current particulate standard. *See Council of Commuter Organizations v. Gorsuch*, 683 F.2d 648, 655 (2d Cir.1982) ("An agency's proposed action is just that and does not bind the agency to follow its initial proposal."). Therefore, the EPA has the statutory authority to enforce the TSP standard against Arizona, to disapprove Arizona's inadequate SIP revision, and to impose a stationary source construction ban against Arizona's Pima County nonattainment area.

The purposes of the Clean Air Act include protecting and enhancing the quality of the nation's air resource. CAA § 101(b)(1), 42 U.S.C. § 7401(b)(1). Enforcement of standards designed to attain that goal is clearly within the power of the enforcing agency.

Moreover, the EPA should be granted flexibility in enforcing the complex provisions of the Clean Air Act. "The need for flexibility in the administration of a statute whose provisions have been described as 'swim[ming] before one's eyes,' ... should not be underestimated. We have in the past been careful to defer to EPA's choice of methods to carry out its 'difficult and complex job' as long as that choice is reasonable and consistent with the [Clean Air] Act." *Connecticut Fund for the Environment v. EPA*, 672 F.2d 998, 1006 (2d Cir.), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 445, 74 L.Ed.2d 601 (1982) (quoting *United States Steel Corp. v. USEPA*, 444 U.S. 1035, 1038, 100 S.Ct. 710, 711, 62 L.Ed.2d 672 ... (1980) (Rehnquist, J. dissenting from denial of certiorari.)).

PETITION DENIED.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth