**Brian McCARTHY; Gayle Hartmann; Alma Williams; Roberta Delaney, Plaintiffs–Appellants,**

**v.**

**Lee M. THOMAS, et al.; City of Tucson, Defendants–Appellees.**

**No. 92–16219.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1993.

Decided June 13, 1994.

**1364**

David S. Baron, Arizona Center for Law in the Public Interest, William W. Pearson, Molloy, Jones & Donahue, Tucson, AZ, for appellants.

M. James Callahan, Asst. City Atty., Phoenix, AZ, for appellee City of Phoenix.

Tobin Rosen, Principal Asst. City Atty., Tucson, AZ, for appellee City of Tucson.

Jacques B. Gelin, David W. Zugschwerdt, U.S. Dept. of Justice, Environment & Nat. Res. Div., Appellate Section, Washington, DC, filed amicus curiae brief for Dept. of Justice, Land and Environment Div.

Before WALLACE, GARTH *, and WIGGINS, Circuit Judges.

Opinion by Judge WIGGINS.

WIGGINS, Circuit Judge:

■ Plaintiffs below ("Appellants") sought from the district court an order requiring the cities of Tucson and Phoenix to enlarge their mass transit systems. Specifically, Appellants asserted that Tucson and Phoenix must comply with certain mass transit proposals that Arizona submitted to the EPA in the late 1970s and early 1980s. The district court disagreed with Appellants and entered summary judgment for the cities. We reverse.

## I.

### A. Statutory Framework

As amended in 1970, the Clean Air Act ("CAA") required the EPA to establish national ambient air quality standards ("NAAQS") for certain airborne pollutants. 42 U.S.C. § 7409.[1] Most relevant to this case, the CAA required the EPA to promulgate standards for carbon monoxide ("CO"). These standards were to be enforced by the states, under the direction of the EPA. Specifically, each state was to submit to the EPA plans designed to implement, maintain, and enforce the NAAQS within the state. *Id.* § 7410(a)(1). The EPA was to review the proposed plans and "approve or disapprove" them. *Id.* § 7410(a) (1988); *see id.* § 7410(k) (1994). EPA approval was to be given to

---

* Hon. Leonard I. Garth, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

1. Those sections of the United States Code that were not amended or repealed in 1990 and remain substantially the same as they stood throughout the 1980s are cited herein without date. Sections relevant because of language that was present in them throughout the 1980s but that was substantially amended or repealed in 1990 are cited to U.S.C. (1988). Sections relevant because of language newly added or substantially amended in 1990 are cited to the present year, 1994.

submitted plans that complied with the CAA. Approved plans became or were added to the state's "state implementation plan" ("SIP"). *See id.* § 7410(d) (1988).

Originally, the statute required each state to attain certain NAAQS within three years from the date the EPA approved the state's SIP. *Id.* § 7410(a)(2)(A) (1988). By 1977, many states had failed to attain within the required time period NAAQS in certain geographical regions, however. Rather than allow those states to be sanctioned and forced to comply, Congress in 1977 allowed time extensions for such "nonattainment" areas. *See id.* § 7501 et seq. (1988). (The part of the CAA added in 1977 to deal with nonattainment areas is generally known as Part D.) Under the new time periods, nonattaining states were to amend their SIPs, to attain NAAQS "as expeditiously as practicable" but "not later than December 31, 1982." *Id.* § 7502(a)(1) (1988).

In the case of NAAQS for CO, if the states demonstrated that attainment was not possible by December 31, 1982, "despite the implementation of all reasonably available measures," the state was required to submit a second revised proposal to the EPA by July 1, 1982. *Id.* § 7502(c) (1988). This proposal was to provide for attainment of CO NAAQS "as expeditiously as practicable but not later than December 31, 1987." *Id.* § 7502(a)(2) (1988).

The CAA also required the EPA to prepare a federal implementation plan ("FIP") promptly after the rejection, in whole or part, of the state's revised SIP proposal. *Id.* § 7410(c)(1). A FIP is a set of enforceable federal regulations that stand in the place of deficient portions of a SIP. The state can prevent the EPA from promulgating a FIP by acting prior to promulgation of the FIP to correct the deficiencies in, and obtain EPA approval of, the part of the SIP that the EPA has found deficient. *Id.; id.* § 7410(k) (1994).

States are required to comply with FIPs and SIPs. *Id.* § 7410(d) (1988); *id.* § 7413. A FIP or SIP, designed to remedy a nonattainment problem, is enforceable in federal court against a state by (1) the EPA or (2) a citizen to the extent permitted by the Eleventh Amendment. *Id.* §§ 7413, 7604(a) & (f).

**B. Facts**

In 1978, the EPA designated certain parts of Pima County (which includes Tucson) and Maricopa County (which includes Phoenix) as nonattainment areas for CO. In early 1979, Arizona submitted to the EPA proposed Pima and Maricopa County SIP revisions for CO. These submissions proposed that Tucson and Phoenix would enlarge their mass transit systems.

On July 23, 1980, the EPA proposed to approve the CO control strategies in the 1979 Pima County CO SIP revision, but only on condition that the state submit, *inter alia,* a schedule for implementation of specific improvements to mass transit. On March 8, 1982, Arizona submitted a document giving a schedule for implementation of mass transit improvements in Pima County ("Pima Improvement Schedule"). On July 7, 1982, the EPA formally approved the Pima Improvement Schedule as a SIP revision, and conditionally approved the Pima County CO SIP overall. 47 Fed.Reg. 29532, 29533–34 (July 7, 1982). The overall approval was conditioned on the correction of deficiencies unrelated to mass transit. The 1979 Pima County CO SIP revision and the Pima Improvement Schedule included plans to expand the Tucson bus fleet by 59 buses (to a total of 199 buses) with ridership of 14.5 million per year by 1986.

The 1979 Maricopa County CO SIP revision proposed to provide by 1982 a 400–bus fleet with average daily ridership of 112,000. On May 5, 1982, the EPA conditionally approved the Maricopa County SIP overall, including the 1979 Maricopa County CO SIP revision. 47 Fed.Reg. 19326, 19327–28 (May 5, 1982). The overall approval was conditioned on the correction of deficiencies unrelated to mass transit. (The May 5 and July 7, 1982, conditional approvals of the Maricopa and Pima plans are called collectively the "1982 Conditional Approvals." The Maricopa County CO SIP revision's, the Pima County CO SIP revision's, and the Pima Improvement Schedule's requirements relating to bus

fleets and ridership are collectively called the "Mass Transit Provisions.")

Arizona failed to correct deficiencies in the Pima and Maricopa CO SIPs for several years, however. On February 24, 1984, the EPA informed Arizona that the Pima and Maricopa County SIPs were not adequate to attain the CO NAAQS by December 31, 1982. The EPA warned that failure to submit and obtain approval of a "1987 Extension SIP" would result in a construction ban. *Arizona v. Thomas,* 829 F.2d 834, 837–38 n. 5 (9th Cir.1987). On September 23, 1986, the EPA formally disapproved the attainment demonstrations (announcements that the plans contain all necessary implementation measures to ensure timely attainment of NAAQS) in the Pima and Maricopa County CO plans, finding that the SIPs did not contain sufficient measures to assure timely attainment. 51 Fed.Reg. 33746, 33746–49 (Sept. 23, 1986). The September 23, 1986, notice approved other measures related to mass transit, however, and left intact in the SIP measures approved prior to 1986. *Id.* at 33,746–48. Arizona challenged the EPA's disapproval of the attainment demonstrations, but the Ninth Circuit affirmed the EPA's disapproval. *Arizona v. Thomas,* 829 F.2d at 838–40.

In 1987 and 1988, the state submitted additional CO control strategy proposals for Pima and Maricopa counties. With these provisions added to the Arizona SIP, the EPA concluded that the Pima and Maricopa County CO plans demonstrated timely attainment of the CO NAAQS. The EPA therefore approved the additional provisions and attainment demonstrations in the Pima and Maricopa County CO SIPs. 53 Fed.Reg. 30220 (Aug. 10, 1988); 53 Fed.Reg. 30224 (Aug. 10, 1988). This 1988 approval did not mention previously approved portions· of the Arizona SIP. However, it gave no indication that it was changing, vacating, or deleting any of those previously approved portions. In the 1988 announcement, the EPA purported to add only a few sections to the numerous provisions already included in the C.F.R. that by their terms apply to Pima and Maricopa Counties. *See* 40 C.F.R. § 52.120 (1993).

Notwithstanding Arizona and the EPA seemed satisfied with the Pima and Maricopa County CO SIPs, the matter was not ended. When the 1988 approval was reviewed in the Ninth Circuit, this court found that the SIPs were not designed to attain NAAQS quickly enough to satisfy the CAA. In March 1990, the Ninth Circuit vacated the August 10, 1988 "final approval" of the Pima and Maricopa County CO SIPs and directed the EPA to promulgate a FIP for Pima and Maricopa counties. *Delaney v. EPA,* 898 F.2d 687, 695 (9th Cir.), *cert. denied sub nom., Reilly v. Delaney,* 498 U.S. 998, 111 S.Ct. 556, 112 L.Ed.2d 563 (1990).

On January 29, 1991, the EPA responded to the *Delaney* order. It announced that in conjunction with promulgating a Pima and Maricopa County FIP, the EPA would leave intact or re-approve all measures that were in place in the Arizona SIP prior to *Delaney* with respect to Pima and Maricopa counties:

Pursuant to the Ninth Circuit's instructions in *Delaney v. EPA,* EPA is proposing, in a separate notice to promulgate a FIP for the Maricopa and Pima County CO nonattainment areas.

While the *Delaney* court vacated EPA's approval of the Arizona plans, EPA does not intend, nor does it consider that the court intended it, to vacate the control measures in the Maricopa and Pima plans which were previously approved by EPA (53 FR 30224, 30220). The court set aside EPA's approval of the plans for failure to include additional measures, beyond those included as part of the control strategy, rather than because the measures submitted by the State were unworthy of approval for their effect in strengthening the SIP. However, because the court's action had the effect of vacating EPA's approval of the individual control measures, *EPA is restoring in this rulemaking its approval of all of the control measures which were in effect prior to the Delaney court's action.*

56 Fed.Reg. 3219, 3220 (January 29, 1991) (emphasis added). Later in the same announcement, the EPA declared:

EPA is today taking final action to restore its original approval of all of the

control measures in the CO SIPs for the Maricopa and Pima County nonattainment areas previously approved by EPA and vacated by the Ninth Circuit in *Delaney. Id.* at 3221. Other language indicates the EPA believed it was leaving intact or re-approving the previously approved measures. *Id.* at 3219–21. Consistent with this belief, the EPA did not amend (nor has it since amended) the C.F.R. to delete the previously approved measures. *See id.* at 3221; 40 C.F.R. § 52.120 (1993).

On February 11, 1991, the EPA published a Pima and Maricopa County CO FIP. Referring to the *Delaney* opinion and the previously approved and re-approved or intact measures, the EPA noted:

> In vacating EPA's 1988 approvals of the Arizona plans, the court determined that they did not contain sufficient control measures to attain the CO ambient air quality standard "as soon as possible." In other words, the court set aside EPA's approvals for failure to include additional measures, beyond those already included as part of the control strategy, rather than because the measures submitted by the State were unworthy of approval for their effect in strengthening the SIP. Therefore, in today's notice, EPA is taking final action to disapprove only the attainment demonstration portions of the [Maricopa] and Pima plans, rather than the individual control measures that serve to strengthen the SIP.

56 Fed.Reg. 5458, 5459 (Feb. 11, 1991). The EPA in a footnote added, "In a separate notice, [filed] on January 28, 1991, EPA took action to restore, as approved parts of the Arizona SIP, the individual control measures vacated by the Ninth Circuit in the Delaney order." *Id.* at 5459 n. 3. (The January 29, 1991 re-approval announcement and the February 11, 1991 FIP are called herein the "1991 Documents.")

The 1991 Documents leave intact the Mass Transit Provisions as they are found in the C.F.R. *See, e.g.,* 40 C.F.R. § 52.120(c)(32)(i), (33), 53(ii) (1992). The EPA has never proposed to rescind the mass transit commitments previously approved. As yet, Tucson has only 168 buses and an annual ridership of 13.6 million per year. Phoenix has only 369 buses with a daily ridership of approximately 103,000.

## C. The Proceedings Below

Appellants filed a lawsuit seeking an injunction requiring Tucson and Phoenix to implement the Mass Transit Provisions. The district court, on a stipulated record, dismissed the claims. The court held that the Mass Transit Provisions were not binding because "the EPA merely adopted th[ese] plan revision[s] [, containing the Mass Transit Provisions,] to the then-existing SIP proposal.... [N]either th[ese] revision[s], nor any other reference to mass transit control measures, appears in any final SIP or FIP." Appellants appealed.

## II.

Appellants question the legal conclusions of the district court as well as the application of those legal conclusions to clearly established, historical facts. This court reviews both issues de novo. *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1791 n. 19, 72 L.Ed.2d 66 (1982); *Anderson v. United States,* 966 F.2d 487, 489 (9th Cir.1992).

Appellants contend that the district court erred in holding that the Mass Transit Provisions do not apply to Tucson and Phoenix. The district court's judgment is premised on the notion that no part of a SIP or FIP is approved and applicable to a state until the EPA includes it specifically in a final approval document (or set of documents) that by its terms requires neither any further SIP revision proposal or submission by the state nor any FIP from the EPA. Only the 1988 approval and the 1991 Documents purport to be final in that sense; each notes that nothing more is required of the state. The 1988 approval did not purport to approve all other measures that had previously been made part of the conditionally approved SIP and that were listed already in the C.F.R., however. Citing this fact, the district court concluded that what was submitted and approved prior to 1988 was not included in the plan finally approved in the EPA's 1988 action. The 1991 Documents purported only to

approve what had been in place at the time of the 1988 approval. Because the district court thought that the 1988 approval omitted previously approved measures, it concluded that the 1991 re-approval also omitted them.

Appellants do not argue with the district court's characterization of the 1988 approval or the 1991 Documents. Rather, Appellants question the underlying premise of the district court's reasoning. They claim that the 1982 Conditional Approvals made the Mass Transit Provisions either enforceable or at least part of Arizona's SIP that would become enforceable when complete. If the Mass Transit Provisions were part of the Arizona SIP in 1982, Appellants claim, then they remained in the SIP until 1988 and were included in the SIP that became complete at that time. Moreover, because the Mass Transit Provisions remained part of the SIP until 1988 and afterward at least until *Delaney* was decided, they were included in the SIP in 1991 when the EPA re-approved or left intact all measures that were in place prior to *Delaney*, Appellants argue. The EPA, appearing here as amicus, interprets the CAA and views the approval process consistent with Appellants' position. We agree with Appellants and the EPA.

### A. *Kamp v. Hernandez*

Our decision is controlled by *Kamp v. Hernandez*, 752 F.2d 1444 (9th Cir.), *modified*, 778 F.2d 527 (1985). *Kamp* involved Arizona's SIP for combatting sulphur dioxide emissions from copper smelters. Arizona had submitted plans for controlling sulphur dioxide. The EPA originally proposed to give "conditional approval" to Arizona's submissions. The EPA said it would approve Arizona's plan on the condition that Arizona submit to the EPA in the near future a plan for controlling fugitive emissions. 752 F.2d at 1449. However, in its final ruling, the EPA "dropped its proposed conditional approval in favor of combining full, unconditional approval of the implementation plan with a requirement that Arizona promulgate fugitive emission regulations." *Id.* The EPA informed Arizona that "if it failed to promulgate adequate and timely regulations, EPA would do so." *Id.*

A citizen of Arizona challenged the EPA's action, arguing that the SIP that resulted from EPA approval of Arizona's plan was improper under the CAA because the state plan as approved was incomplete. Specifically, the plan lacked regulations controlling fugitive emissions. The citizen argued that the inadequacy of the plan mandated that the EPA issue a FIP. We rejected that argument as follows:

> [A]n implementation plan need not be in absolute compliance with § 110(a)(2) [42 U.S.C. § 7410(a)(2) (1988)] before it receives federal approval. EPA can approve a substantially complete implementation plan if it has assurance that the state will promptly complete the plan and if the approval of the incomplete plan does not circumvent any of the Act's substantive requirements.... [T]he demands of its difficult and complex job require that EPA be given some flexibility to approve nearly complete implementation plans.

752 F.2d at 1455 (citations and internal quotations omitted). In *Kamp*, we affirmed EPA approval of Arizona's plan for sulphur dioxide because the plan was substantially complete. Accordingly, we held that such incremental approval of the SIP was in accord with the CAA and that no FIP was required. *Id.* at 1454–55.

The 1982 Conditional Approvals were not substantively different from the EPA approval at issue in *Kamp*. As the 1982 Conditional Approvals state, conditional approval may be given only when the deficiency in the plan "is not judged to be major." 47 Fed.Reg. at 19327 (May 5, 1982); *see* 47 Fed.Reg. at 29532–33 (July 7, 1982) (directing that the May 5, 1982 notice be used as a reference in reviewing the July 7, 1982 notice). Accordingly, the 1982 Conditional Approvals note only minor deficiencies in the Pima and Maricopa plans. 47 Fed.Reg. at 19327–28 (May 5, 1982) ("[O]nly minor deficiencies remain in the [plan]."); 47 Fed.Reg. at 29533 (July 7, 1982) ("[T]he ... [plan] contains only minor deficiencies...."). Neither Tucson nor Phoenix challenges these characterizations. Because the 1982 Conditional Approvals addressed plans that were "substantially complete" within the meaning of *Kamp*, the ap-

provals were proper. Upon proper approval by the EPA, the plans became part of Arizona's SIP, now binding on the cities.

That the EPA opted in *Kamp* to call its action "final" rather than "conditional" is irrelevant in this case. The plan in *Kamp* was just as complete or incomplete as was the plan in the instant case. Whether the extra work the state has to do is called "complying with a condition in order to obtain EPA approval so that the EPA will not issue a FIP" or "complying with a requirement so that the EPA will not issue a FIP" is really irrelevant to whether the approved portions of the incomplete plan become part of the state's SIP. The EPA in *Kamp* unilaterally changed "conditional approval" to "final approval with requirements" without changing any substantive provisions of the plan and without requiring anything more of Arizona than it would have if it had conditionally approved Arizona's plan. The EPA's ability to make this change implies that the two modes of plan approval make no difference as to whether the approved portions of the plan actually become part of the state's SIP.

**B. Deference to the EPA's Construction of the CAA**

■ Even were our decision not controlled by *Kamp*, we would reach the same result in deference to the EPA's interpretation of the statute. The EPA interprets the pre–1990 CAA to allow it to approve conditionally portions of plans submitted by states, such that the approved portions become part of a state's SIP.

The CAA provided prior to 1990 that the EPA may approve any submitted plan "or any portion thereof." 42 U.S.C. § 7410(a)(2) (1988); *cf. id.* § 7410(k)(3), (4) (1994). According to the EPA, approval of a portion of a submitted plan would be meaningless if the approved portion did not become part of a SIP at the time of the approval. Because the EPA could approve a portion of a plan submitted by a state, the EPA could, it claims, by implication, approve revisions to the plan applicable to a nonattainment area without approving the attainment demonstrations that would render the plan complete.

Moreover, under 42 U.S.C. § 7410(c)(1) (1988), the EPA was not required to promulgate a FIP if, after the state's original submitted plan or a portion thereof had been rejected, the state timely submitted a revision of the plan that the EPA determined it could approve. *Cf. id.* § 7410(k) (1994). The EPA and Appellants assert that section 7410(c)(1) (1988), in conjunction with the EPA's authority to approve portions of submitted plans, impliedly gave the EPA authority to approve incomplete plans and require revisions as a condition precedent to final and complete approval of a SIP. *City of Seabrook v. EPA,* 659 F.2d 1349, 1356 (5th Cir.1981), *cert. denied sub nom., Vavra v. EPA,* 459 U.S. 822, 103 S.Ct. 51, 74 L.Ed.2d 57 (1982). Accordingly, the EPA considers SIP revisions to be "*additions to,* rather than in lieu of, the existing SIP," unless "specifically stated otherwise and accepted by [the] EPA." EPA Office of Air Quality Planning and Standards, *Guidance Document for Correction of Part D SIP's for Nonattainment Areas* 32 (1984) (emphasis added). The EPA used its authority under these statutes to approve conditionally plans that are substantially complete (and only such plans, as noted *supra* ).

This reading of the CAA is reasonable. *City of Seabrook,* 659 F.2d at 1356 (also noting that other reasonable readings may be possible). This incremental approach fostered attainment of NAAQS "as expeditiously as practicable," as required by the CAA, 42 U.S.C. § 7502(a) (1988).

The EPA's actions in the instant case conform to this interpretation of the statute. The EPA considered the Mass Transit Provisions, approved by the 1982 Conditional Approvals, to be part of Arizona's SIP when published in the Federal Register. *See* 47 Fed.Reg. at 19328 ("This action may not be challenged later [than 60 days from May 5, 1982] in proceedings to enforce its requirements."); 47 Fed.Reg. at 29534 (same (but not later than 60 days from July 7, 1982)). The EPA accordingly denoted each of the 1982 Conditional Approvals a "final rulemaking." Moreover, the EPA has allowed the Mass Transit Provisions to remain in the C.F.R. since they were approved in 1982. It

is doubtful that the EPA would allow the Mass Transit Provisions to remain in the C.F.R. version of the Arizona SIP if it considered them unenforceable.[2] The EPA clearly considers approved portions of conditionally approved plans to be part of a SIP. The EPA's reasonable interpretation of the CAA is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[3] We therefore adhere to that interpretation.[4]

The district court's interpretation of the statute, unlike that of the EPA, is unreasonable. The district court's reasoning leaves intact only the most recently approved revisions to a SIP or, alternatively, requires the EPA to re-approve all previously approved provisions each time it approves another portion of a SIP. If the EPA does not include such a re-approval every time it issues a ruling, and particularly when approving attainment provisions, all of the other provisions previously approved and present in the SIP as printed in the C.F.R. would be excluded. The district court's ruling has a potentially counterproductive result in the

instant case. As the EPA notes, the 1991 Documents bring the Arizona SIP into compliance with the CAA only when combined with the submissions approved in the 1988 approval *and* all of the measures existing in the SIP as set forth in the C.F.R. and approved previous to 1988. Thus, according to the EPA, the SIP presently held enforceable by the district court—which includes only the specific provisions mentioned in the 1988 approval and the 1991 Documents—is insufficient under the CAA.[5]

### C. Decision from Other Circuits

Our decision is supported by decisions from other circuits. *Connecticut Fund for the Env't, Inc. v. EPA*, 672 F.2d 998, 1005–06 (2d Cir.) (holding that the EPA may conditionally approve a plan submitted by a state and that the conditionally approved plan becomes part of the state's SIP), *cert. denied sub nom., Manchester Envtl. Coalition v. EPA*, 459 U.S. 1035, 103 S.Ct. 445, 74 L.Ed.2d 601 (same); *see Michigan v. Thomas*, 805 F.2d 176, 186 (6th Cir.1986) (holding that the EPA may partially approve a pro-

---

2. Appellants and the EPA contend that the Mass Transit Provisions are part of the presently enforceable SIP/FIP because they have never been removed from the plan as promulgated in the C.F.R. They argue that deletion or removal would require notice and a hearing under the APA. *See Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 40–41, 103 S.Ct. 2856, 2865–66, 77 L.Ed.2d 443 (1983) (holding a revocation of a rule subject to APA procedural requirements); *United States v. Florida East Coast Ry. Co.*, 410 U.S. 224, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973). No notice or hearing regarding revocation or deletion has occurred in this case. We need not and do not decide whether removing the provisions from the C.F.R. would require notice and a hearing under the APA, however. We are satisfied that the Mass Transit Provisions have never been deleted from the Arizona SIP.

3. The 1990 Amendments to the CAA do not detract from the EPA's ability prior to 1990 to approve plans incrementally. *See* 42 U.S.C. § 7410(n)(1) (1994). Moreover, § 7410(k) (1994) spells out in detail the EPA's authority to approve plans incrementally after the effective date of the 1990 amendments.

4. We reject Phoenix's suggestion that conditional approval was not authorized by the CAA prior to

1990 because it was not mentioned in the definition of "applicable implementation plan" set forth in the CAA. *See* 42 U.S.C. § 7410(d) (1988) (defining "applicable implementation plan" to mean "the implementation plan, or most recent revision thereof, which has been approved" or promulgated by the EPA). We find nothing in this definition that detracts from our analysis. Other sections of the statute allowed conditional approval. Thus, "approved" in § 7410(d) (1988) included "conditionally approved." A conditionally approved plan was the most recently approved plan or revision thereof.

5. The district court may have thought that the EPA in giving "conditional approval" to a state's submissions was withholding present approval of any and all portions of the submissions but promising future approval upon state compliance with conditions outlined by the EPA. Such an understanding of the EPA's action would be mistaken. As the discussion in this Part II of the opinion shows, the EPA's "conditional approval" gave actual, final approval to various portions of the state's submissions but withheld final approval of the state plan until the state complied with the stated conditions. "Conditional approval" meant that approval of the plan's attainment demonstrations would not be forthcoming from the EPA until additional pollution-avoiding procedures were planned by the state and approved by the EPA.

posal for general areas within the state but disapprove it for nonattainment areas, thereby requiring the state to submit further proposals). In *Council of Commuter Org. v. Metropolitan Transp. Auth.*, 683 F.2d 663 (2d Cir.1982) [*CCO v. MTA*], the district court had dismissed a citizen's suit complaint, holding that it alleged violations of no enforceable SIP provisions. The court of appeals stated that the district court had failed to take into account provisions of the conditionally approved portions of the plan:

> The transportation control strategies, emissions inventory revision requirements, and other provisions satisfying Part D requirements in that plan became effective and enforceable as part of an applicable implementation plan upon EPA's conditional approval in May 1980.

*Id.* at 670. In the end, the *CCO v. MTA* court affirmed the district court, holding that the complaint failed to state a violation of the conditionally approved provisions. *Id.* at 671. The court clearly indicated that it thought the conditionally approved provisions enforceable, however.

### III.

Tucson and Phoenix present numerous arguments in support of the district court's decision. We find each of these arguments unpersuasive.

#### A. *Delaney*

The cities and the district court rely in part on a passage in *Delaney* to conclude that in 1988 the Arizona SIP did not contain the Mass Transit Provisions. After listing the three nontransit measures that the EPA approved in 1988, the *Delaney* court noted that other measures, including expansion of mass transit, had been excluded. 898 F.2d at 691. The district court thought the mass transit measures excluded in 1988 were the Mass Transit Provisions. The district court incorrectly interpreted *Delaney*. The mass transit commitments excluded in 1988 were submitted by Arizona to the EPA in 1987 or 1988 and were in addition to the Mass Transit Provisions, which were already in the SIP. The exclusion of these mass transit requirements submitted in 1987 or 1988 did not

mean that those already part of the SIP were no longer part.

#### B. *Arizona v. Thomas*

Tucson also argues that factual statements made by this court in *Arizona v. Thomas*, 829 F.2d at 834, preclude a finding that the Mass Transit Provisions are enforceable. The *Arizona v. Thomas* court noted in its 1987 opinion regarding the Pima and Maricopa County SIPs that "no satisfactory plan had ever been submitted." 829 F.2d at 835. The court also stated that "Arizona ... never had plans for Maricopa and Pima counties which appeared to meet all the requirements [of the CAA], much less plans which had been fully approved." 829 F.2d at 838. The court continued:

> Having failed in its obligation to produce or make reasonable efforts to produce SIPs which would appear to meet the requirements of the Act, Arizona should not be given another opportunity to produce more plans. .... Arizona nonattainment areas never had ... a plan [in full compliance]. Congress intended EPA to disapprove SIPs with evident planning deficiencies, even if full approval had once been granted.

829 F.2d at 839.

Tucson reads *Arizona v. Thomas* too expansively. The *Arizona v. Thomas* court reviewed the EPA's September 23, 1986, action only to the extent that the EPA via the notice issued on that date disapproved the attainment demonstrations in the Arizona CO SIP for Pima and Maricopa counties and imposed a construction ban. The EPA disapproved the attainment demonstration because the SIP did not contain sufficient measures to assure timely attainment. 829 F.2d at 836–39. The court in *Arizona v. Thomas* did not disturb the EPA's judgment that Arizona's SIP would not timely attain the required standards. But the court also left intact other action taken by the EPA in the September 23, 1986, notice, which approved other measures related to mass transit. 51 Fed.Reg. at 33,746–49. The court did not disturb other, earlier EPA approvals, either, such as the 1982 Conditional Approvals. In fact, the time for challenging the 1982 Condi-

tional Approvals in the Ninth Circuit had long since past by 1987, when *Arizona v. Thomas* was decided. *See* 42 U.S.C. § 7607(b)(1) (allowing 60 days to obtain judicial review of EPA approval of a SIP). In 1987, nothing before the court or the EPA indicated that provisions of the Pima and Maricopa County SIPs (other than the CO attainment demonstrations) were no longer approved or that previous approvals were no longer valid.

### C. Other Case Law

Tucson also cites *California ex rel. California Air Resources Bd. v. E.P.A.*, 774 F.2d 1437 (9th Cir.1985). There the state of Nevada contended that California's SIP did not provide for attainment as expeditiously as possible because it did not include some measures that were included in an earlier implementation plan but that had since been deleted. 774 F.2d at 1442. The court held that the California SIP would reach attainment quickly enough and that California was not bound by deleted measures. *Id.* Tucson argues that because the 1982 Conditional Approvals made no plan provision applicable and the 1988 approval and 1991 Documents did not include the Mass Transit Provisions, the Mass Transit Provisions are no more effective than were the deleted provisions in the plan at issue in *California Air Resources Bd.* Tucson makes a similar argument based on *CCO v. MTA*, in which the Second Circuit also held that deleted provisions were unenforceable. 683 F.2d at 668–69.

Our ruling that the 1982 Conditional Approvals made the Mass Transit Provisions part of Arizona's SIP undercuts Tucson's reliance on these cases, however. The Mass Transit Provisions became part of the SIP in 1982 and have not been deleted from it. Moreover, the failure of the 1988 approval and the 1991 Documents specifically to incorporate the Mass Transit Provisions is irrelevant. Nothing in the 1988 approval or the 1991 Documents purported to replace previously existing provisions of the SIP as the EPA had recorded them in the C.F.R. Rather, each only amended or added to the plans set forth in the C.F.R. Accordingly, the 1982 Conditional Approvals remained val-

id at least until *Delaney* and either remained valid or were restored after *Delaney*.

### D. Inadequacy of Arizona's 1979–82 Submissions to the EPA?

Phoenix claims that the 1982 Conditional Approvals of the Mass Transit Provisions were improper because Arizona's submissions to the EPA relating to mass transit during the 1979–82 period were not in compliance with 42 U.S.C. § 7502(b) (1988). Section 7502(b) required plans submitted under Part D to include

> written evidence that the State, the general purpose local government or governments, or a regional agency designated by general purpose local governments for such purpose, have adopted by statute, regulation, ordinance, or other legally enforceable document, the necessary requirements and schedules and timetables for compliance, and are committed to implement and enforce the appropriate elements of the plan.

42 U.S.C. § 7502(b)(10) (1988). Phoenix claims that nothing in the record shows that the Maricopa County SIP proposal contained such written evidence.

Phoenix is too late to claim that the plan submitted was deficient under 42 U.S.C. § 7502(b)(10) (1988), however. The city had sixty days within which to object to the approval of a plan, *see id.* § 7607(b)(1), but failed to do so. Phoenix has thus waived the argument that the approval was defective. *See Friends of the Earth v. Carey*, 552 F.2d 25, 34–36 (2d Cir.), *cert. denied sub nom., Beame v. Friends of the Earth*, 434 U.S. 902, 98 S.Ct. 296, 54 L.Ed.2d 188 *and cert. denied*, 434 U.S. 902, 98 S.Ct. 296, 54 L.Ed.2d 188 (1977); *American Lung Ass'n of N.J. v. Kean*, 670 F.Supp. 1285, 1289–91 (D.N.J. 1987), *aff'd*, 871 F.2d 319 (3d Cir.1989).

### E. Confusion?

Phoenix also argues that the interpretation of the CAA argued by Appellants and the EPA generates confusion because it forces a city to track the EPA's past actions to glean what the EPA deems to be currently enforceable measures. But Phoenix overstates the difficulty of its task. Under present

EPA policy, the city need only look to the C.F.R., relevant portions of the Federal Register, and its state's own submissions to the EPA to discover the presently enforceable SIP. *See also* 42 U.S.C. § 7410(h) (1994) (requiring the EPA to "assemble and publish [by Nov. 15, 1995, and again every three years thereafter] a comprehensive document for each State setting forth all requirements of the applicable implementation plan for such State").

## IV.

For the foregoing reasons, we find to be incorrect the premise on which the district court's ruling was based. A part of a state's proposal to the EPA that the EPA approves conditionally (with only minor deficiencies to be remedied) becomes part of the state's SIP. The EPA need not include specific reference to the approved provision in a later notice that purports to make the SIP or FIP complete, in order to include the earlier approved provision in the federally enforceable plan. Thus, the Mass Transit Provisions became part of the Arizona SIP in 1982 and were still part of it in 1988 when the attainment demonstration was approved. Finally, the Mass Transit Provisions were re-approved or left intact by the 1991 Documents. The Mass Transit Provisions therefore now bind the cities of Tucson and Phoenix.

Appellants request that we remand with instructions to the district court to grant summary judgment against the cities and to enforce that judgment by injunction. Tucson and Phoenix oppose this request and ask that we remand so that the district court may fashion a remedy. We decline to fashion a remedy in this court.

The decision of the district court is REVERSED. The case is remanded to the district court for proceedings consistent with this opinion. Appellants' request for attorneys' fees pursuant to 42 U.S.C. § 7604(d) is granted. Tucson's request for attorneys' fees is denied.